**Henrietta NEMITOFF, d/b/a Parker & Parker Nursing Home, Appellant,**

v.

**Herbert R. DOMKE, Director, Missouri Division of Health, Respondent.**

No. 60025.

Supreme Court of Missouri, En Banc.

April 14, 1978.

Rehearing Denied May 9, 1978.

David H. Dunlap, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Louren R. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

BARDGETT, Judge.

Appeal from the denial of a license to operate a nursing home. The original direct appeal was to the court of appeals, Kansas City district, where the judgment was reversed and remanded. On applica-

tion of respondent, director of the Missouri Division of Health, we transferred the appeal to this court to determine whether the director may deny a license as differentiated from "refuse to renew" or "revoke or suspend", for failure to substantially comply with the requirements (rules and regulations) promulgated by the director, or whether the director is restricted in all cases of application for a license to the literal language of "minimum standards" as used in sec. 198.120, RSMo 1969.

Appellant contends the director is restricted to sec. 198.120 with respect to the instant application. The director contends he can deny an application for license when he finds a substantial noncompliance with the "requirements" established under sec. 198.140 (Nursing Home Licensure Law). The director includes rules and regulations within the definition of requirements. The appellant excludes rules and regulations from her definition of "minimum standards". In some respects the differences seem to be in part semantical but, nevertheless, require resolution. It also appears that appellant wants the court to treat her application for license as if it is an application for an original license for a new nursing home and to ignore the fact that this is not a new nursing home.

The facts are as follows: For sometime prior to August 1969, there was an operating nursing home in Independence named Kennedy Nursing Home. In August 1969, A. J. Parker leased the Kennedy Nursing Home and changed the name to Parker-Kennedy Nursing Home. In September 1969, Parker applied to the director of health for a license to operate as a practical nursing home, and on September 25, 1969, a 90-day provisional license was issued to A. J. Parker. On December 23, 1969, and February 26, 1970, inspectors of the division found substantial noncompliance with the division's rules and regulations, but on March 6, 1970, a license was issued to A. J. Parker, owner and operator. On April 7, 1970, a hearing was held by the division to decide if Parker's license should be revoked and on July 31, 1970, it was revoked. No appeal was taken.

On October 9, 1970, A. J. Parker reapplied for a practical nursing home license for Parker-Kennedy Nursing Home and on November 10, 1970, filed a corrected application showing the correct name to be Parker & Parker Nursing Home. On September 1, 1971, A. J. Parker reapplied to the director for a license but the director refused to accept the application. On October 9, 1971, Henrietta Nemitoff requested an application for a practical nursing home license but was refused. On November 1, 1971, Nemitoff leased the Parker & Parker Nursing Home and in February 1972 submitted an application for a license to operate it as a practical nursing home. This application was refused on February 17, 1972. Then in September of 1972 Nemitoff applied again for a license but no action was ever taken on that application. On March 10, 1973, Nemitoff requested a hearing on her September 1972 application. No hearing was set but Nemitoff was invited to submit another application. On June 22, 1973, the division inspectors, Ruth Marshall and William Sisk, inspected the home and submitted their report. In response to an invitation by the director of health, Nemitoff submitted another application on August 7, 1973, and after two continuances an administrative hearing was held on November 1, 1973, before Jesse Bartlett, an administrator with the Missouri Division of Health, who was designated by Dr. Domke, the director, to conduct the hearing.

The evidence for the division of health at the hearing consisted of a stipulation of facts, most of which is set forth supra; the inspection report dated June 27, 1973, of division inspector William Sisk, Sanitarian I, of the June 22, 1973, inspection; and the inspection report dated June 26, 1973, of Ruth Marshall, R.N., Institutional Advisory Nurse, of the inspection of June 22, 1973. The evidence for appellant Nemitoff consisted of the affidavit of A. J. Parker, who was at the time of the affidavit (October 31, 1973) administrator of the nursing home, and the personal testimony of Henrietta Nemitoff, R.N., who was operating the home under a lease purchase agreement

and who was considered as being the owner of the nursing home for the purpose of the proceedings. At the conclusion of the presentation of the evidence, Mr. Bartlett announced there would be a further inspection and then the transcript of the hearing and the documents (inspection reports and affidavits) would be forwarded to Dr. Domke, the director, for his determination. Mr. Bartlett made no findings or recommendation of record.

On December 12, 1973, William Sisk, accompanied by Ruth Marshall, made another inspection of the home and they filed reports. On April 16, 1974, the director filed his written findings of fact and concluded that "Parker and Parker Nursing Home has not substantially complied with the Practical Nursing Home Rules and Regulations promulgated by the Division of Health pursuant to Section 198.081, RSMo., and the application for a license filed herein on August 7, 1973, is accordingly denied."

Appellant appealed to the circuit court where the denial was affirmed and she then appealed to the court of appeals where it was reversed and remanded for further consideration by the division of health. As stated supra, the appeal was thereafter transferred to this court.

Although one license was revoked in 1970 and, according to the record here, none have been subsequently issued, it appears that the nursing home has continued in operation without interruption.

As noted supra, appellant insists she is not subject to the "rules and regulations" because they are not "minimum standards" as that phrase is used in sec. 198.120 which specifies the grounds for denial of a license and because the division of health has not prescribed or published "minimum standards" with respect to patient care and identified such publication as "minimum standards".

The Nursing Home Licensure Law deals with all aspects of nursing homes. It recognizes that some applications will relate to a physical facility that has not been used as a nursing home previously and will not be so used until a license is issued. Obviously that applicant and that proposed nursing home could not be inspected with respect to compliance with ongoing regulations or requirements regarding patient care because there have been no patients.

Other applications are filed by persons new to the nursing home business who desire to utilize a physical facility already in use as a nursing home in which there already are a number of patients. In such instances there is a basis for inspection with respect to compliance with regulations or requirements as to patient care as well as requirements regarding the structure. One other variable may be that the new applicant for a license to continue with an existing nursing home business may or may not have participated in the operation of the particular home by the time the inspection is conducted and the application for license is considered.

In the instant case the appellant sought to become the licensee of a practical nursing home that had been operating for a number of years. It appears that patients remained in the home after the license issued to Mr. Parker was revoked in 1970, that patients were still in the home when appellant Nemitoff applied for a license, and that patients were in the home during the pendency of her application and during all inspections made in connection with her application. For a substantial period of time while her application was pending, appellant was in fact the lessee and the operator of the nursing home. The leasing arrangement was to continue until such time as she became licensed or the licensing procedures had been exhausted. As of the time the administrative hearing was held on November 1, 1973, appellant had discharged the prior licensee who had been the administrator of the home. An inspection of the home had been conducted the previous June 22 and the reports were, by stipulation, entered in evidence. There were twenty patients in the home at that time. The reports listed over forty deficiencies, many of which are obviously minor and which could be corrected with very little effort either by providing the missing equipment

or by correcting a practice. Others could be solved by the same methods but are of a more serious nature. Appellant, by stipulation, submitted the affidavit of A. J. Parker, the acting administrator of the home. The affidavit dealt with the alleged deficiencies in the inspectors'· reports one by one and tried to explain the matter, deny the defects, or show that the defects had been corrected. Almost all of the deficiencies alleged concerned the day-by-day operation of the home and were directly related to specific patients and their care.

At the conclusion of the hearing, the hearing officer announced that a further inspection of the home would be made before any final decision on the application would be made by Dr. Domke, the director. No objection was made to the director considering the inspection reports of June 1973, the affidavit of A. J. Parker, or the report of the inspection to be made after the hearing.

An inspection was made December 12, 1973, and the reports were forwarded to the director along with the transcript of the November 1, 1973, hearing, and the reports of the June 1973 inspection. Appellant's attorney forwarded a lengthy letter containing appellant's comments and responses to the reports of the December 1973 inspection. Some of these responses again were explanations justifying what the inspectors reported as deficiencies, a denial of some allegations, and a statement that others had been corrected. The reports of the December 12, 1973, inspection contained approximately 34 alleged deficiencies, most of which dealt with things that occur on a day-to-day operation of the home. It seems apparent from a comparison between the June and December inspection reports that some alleged deficiencies had been remedied.

It is apparent from the proceedings that appellant knew the granting of a license to her depended upon the director's findings, and that the inspection reports, appellant's testimony, the affidavits of Parker, and the responses of appellant, contained the material upon which the director would decide the license question. Virtually all of the matters referred to concerned alleged violations of the "rules and regulations" published by the division of health in a pamphlet entitled, "Missouri Nursing Home Licensure Law". The word "standards" is used with reference to construction, fire safety, etc. "Requirements" is the word used in the title to the chapter dealing with administration of a home and patient care, and these topics are subdivided into "regulations" with each regulation having several "specific requirements".

Sec. 198.140 provides in part: "The division of health, after notice and opportunity for a hearing to the *applicant* or licensee, is authorized to *deny,* suspend, revoke or refuse to renew a license in any case in which it finds there has been a substantial failure to comply with the *requirements* established under this law." (emphasis supplied.)

Sec. 198.120 provides in part: "Grounds for denial of licenses.—An application for a license may be denied for any of the following reasons:

"(1) Failure to meet any of the minimum standards prescribed by the division of health under section 198.072; . . ."

Sec. 198.072 provides in part: "The division of health shall prescribe and publish minimum standards for all homes . . .. These standards shall relate to:

"(1) Location and construction of the home, including plumbing, heating, . .

"(2) Number and qualification of all personnel and hours of service, including management, . . .

"(3) All ‚sanitary conditions within the home and its surroundings, including water supply, sewage disposal, food, clothing and general hygiene which shall insure the health and comfort of residents;

"(4) Diet . . .

"(5) Equipment, facilities and supplies essential to the care, health and welfare of the residents;

"(6) Quality of patient care."

Sec. 198.081 authorizes the division to adopt and enforce rules and regulations relating to the operation of homes, etc., in addition to the authority to prescribe minimum standards.

As noted supra, subsecs. (3)(5) and (6) of sec. 198.072, authorize the division to prescribe minimum standards with respect to sanitary conditions, equipment, etc., essential to the care, health and welfare of the residents and quality of patient care. Chapter 5 of the pamphlet is entitled, "Patient Care Requirements for New and Existing Practical Nursing Homes", and sets forth what a home must provide in this respect. Chapter 5 is not called "minimum standards", but rather "Requirements". It contains numbered "regulations" and numerous "specific requirements". This obviously was adopted pursuant to sec. 198.-072(6) authorizing adoption of minimum standards for patient care but is referred to as "requirements", "regulations", and "specific requirements".

Considering the variety of terms used throughout the entire act and the verbiage used by the division in describing the provisions adopted by it under the act, it seems clear that the legislature used the terms interchangeably and was so understood by the division since the enactment of the act in 1957. The act contained no "grandfather" clause and was made applicable to nursing homes operating at the time of its passage.

It is unreasonable to believe the legislature authorized the revocation or denial of renewal of a license to an existing home and licensee for failure to comply with the requirements of the division and at the same time intended an existing nursing home to continue to be licensed even though the operator was in substantial violation of the requirements simply because a different person made application for a new license, and even though the new applicant participated in the home's operation during the period of substantial noncompliance.

■ The court holds the provisions of the division's prescriptions denominated "regulations" or "requirements" or "specific re-quirements" or "standards" or "minimum standards" are applicable to an applicant for a nursing home license where the facility to be used by the applicant is then being used as a nursing home. Specifically, it was proper to apply those provisions to the appellant's application in this case.

Appellant next contends the respondent's decision and order did not contain proper findings of fact in that the findings merely recited what inspection reports indicated rather than stating that actual conditions existed. Appellant also contends the "findings were unsupported by substantial and competent evidence", that respondent failed to consider "undisputed" evidence contained in A. J. Parker's affidavit, and that respondent's finding of fact number 2 tacitly admits that appellant had corrected certain violations found in finding number 1.

The findings, conclusion and order denying the license were entered April 16, 1974. The findings are in two sections. Section one relates to the violations reported as a result of the June 1973 inspections. The affidavit of A. J. Parker related to the same subject matter. The second section related to the violations shown by the inspection report of the inspector that took place after the hearing and to which appellant's counsel responded in behalf of appellant.

The findings recite the director found the first group of violations to have existed on November 1, 1973. They are 18 in number and refer to specific regulations. The second group are violations found by the director to have existed as of the December 19, 1973, inspection and they are 16 in number and again are specific and refer to numbered regulations. The findings recite the violations existed as stated supra and then, when reciting the specific violations, refer to one of the inspection reports and use the phrase the "report indicates" and then recite what the report says.

■ Appellant contends the director's use of the term "report indicates" did not constitute a finding that the deficiency existed. The director did specifically find the defi-

ciencies to exist as of a specific time. He used the reports as a reference to a particular deficiency. The findings were specific and definite. The point is overruled.

Appellant's contention that the director did not consider the affidavit of A. J. Parker is not supported by the record. It was admitted in evidence and transmitted to the director. The court has no basis for concluding that he did not consider the evidence. The point is overruled.

■ Appellant contends the findings were not supported by competent and substantial evidence. The court has reviewed the reports and finds them to be competent and substantial evidence of the violations found to exist.

The contention that the second group of findings tacitly admits appellant's correction of certain violations found in the first finding is a bit deceptive. It is true that the second group of findings which is based on the post-hearing inspection tends to indicate that certain of the deficiencies found to exist as of an earlier date in the first group of findings had been corrected. Other violations were found to exist in the second group. The violations were found to exist by the director within a relatively short period, November 1, 1973, to December 19, 1973. Even though some of the November 1 deficiencies were corrected as of December 19, the evidence still affords ample support for the denial of a license.

The judgment is affirmed.

All of the Judges concur.